399 So.2d 1091 (1981)
STATE of Florida, Appellant,
v.
Alfred GRIZZELL, Appellee.
No. XX-350.
District Court of Appeal of Florida, First District.
June 23, 1981.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellant.
Michael J. Minerva, Public Defender, and Nancy A. Daniels, Asst. Public Defender, Tallahassee, for appellee.
OWEN, WILLIAM C., Jr. (Retired), Associate Judge.
The issue here is whether, under the unique facts of this case, the "anti-shuttling" provision of the Interstate Agreement on Detainers[1] effectively bars the State of Florida from delivering temporary custody of Alfred Eugene Grizzell to the State of Tennessee for the purpose of there standing trial on outstanding criminal indictments. Answering that question in the negative, we reverse the order and final judgment of the trial court which granted writ of habeas corpus and permanently enjoined the State of Florida from delivering temporary custody of Mr. Grizzell to the Tennessee authorities.
In February, 1975, Alfred Eugene Grizzell, appellee, escaped from the Florida correctional system and while at large allegedly committed the crimes of armed robbery and kidnapping in the State of Tennessee. Appellee was subsequently captured in Ohio in July, 1975, and returned to Florida. In April, 1976, appellee was indicted in Tennessee for armed robbery and kidnapping. *1092 Tennessee authorities instituted appropriate proceedings under Section 4 of the interstate agreement,[2] as a result of which the State of Florida relinquished temporary custody of appellee to Tennessee in April, 1977. On June 10, 1977, a hearing was held in Tennessee on appellee's motion to dismiss the indictments for a violation of the speedy trial provisions of the act. The Tennessee trial court granted appellee's motion and ordered his return to the State of Florida. Tennessee appealed the trial court's order of dismissal, but being unsuccessful in its efforts to obtain a stay pending appeal, Tennessee was required to return appellee to the State of Florida correctional system.
In February, 1979, the Tennessee Court of Criminal Appeals reversed the trial court's order dismissing the indictments, and remanded the case to the trial court for further proceedings. In August, 1979, the State of Tennessee again requested Florida to deliver temporary custody of appellee for the purpose of bringing him to trial in Tennessee on the charges alleged in the indictments. Appellee then filed in the Circuit Court of Union County, Florida, a petition for writ of habeas corpus seeking to enjoin Florida officials from releasing him to the Tennessee authorities. The trial court granted the petition and permanently enjoined the State of Florida from delivering custody of appellee to the Tennessee authorities on the grounds that the "anti-shuttling" provision of the interstate act, Section 941.45(4)(e), Florida Statutes,[3] rendered the Tennessee indictments invalid because appellee had been returned to the original place of imprisonment before being tried upon those indictments.
The rights afforded a prisoner under the Interstate Agreement on Detainers do not rise to the level of constitutionally guaranteed rights, Jones v. State, 386 So.2d 804 (Fla. 1st DCA 1980), and can be waived. Gray v. Benson, 608 F.2d 825 (10th Cir.1979); United States v. Black, 609 F.2d 1330 (9th Cir.1979); United States v. Eaddy, 595 F.2d 341 (6th Cir.1979); United States v. Ford, 550 F.2d 732 (2d Cir.1977), aff'd. sub nom. United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); United States v. Scallion, 548 F.2d 1168 (5th Cir.1977), cert. denied, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978). The common factor in the waiver cases, and the one most heavily relied upon by the courts, is the prisoner's request to be returned to the original place of imprisonment prior to being tried in the receiving state. While there is nothing in the record to show that after appellee had successfully obtained the erroneous dismissal of the indictments against him in Tennessee, he expressly requested that he be returned to the Florida correctional system, the record clearly implies that he made such a request. Without question, he successfully resisted the efforts of Tennessee officials to obtain a stay of the order requiring his return to Florida. No other reasonable construction can be put on that conduct than that he sought to be returned to the original place of imprisonment. We hold that under the facts of this case and in accord with the rationale of the above-cited cases, appellee, by his conduct, waived the protection of the anti-shuttling provisions of the act.
While our decision is grounded solely on the basis of waiver, without more, it is certainly bolstered by two other important considerations.
First, the return of appellee to the State of Florida pending resolution of the appeal taken to the Tennessee Court of Criminal Appeals was in furtherance of the stated purpose of the act to "prevent excessive interference with the prisoner's rehabilitation in a state prison system." See Jones v. State, supra; Neville v. Friedman, 367 N.E.2d 1341 (Ill. 1977). The appeal took nearly twenty months to be resolved, during *1093 which time, had appellee remained in the State of Tennessee, such extended stay would clearly have been excessive interference with his rehabilitation in the Florida prison system.
Second, pragmatically, a prisoner should not have the benefit of the anti-shuttling provision where he seeks and obtains dismissal of the indictment, information or complaint on grounds which are subsequently overturned on appeal. Otherwise, the appeal, though successful, would be purely academic if upon remand the indictment must again suffer dismissal, this time due to the effect of the anti-shuttling provision.[4]
Our decision is on the appellate issue as phrased in the initial paragraph. We do not intend for this decision to be precedent on the separate issue of whether the receiving state (rather than the sending state) is the proper forum in which to utilize the anti-shuttling provision to attack the validity of the indictment, information or complaint, a question neither raised by the parties nor decided by us.
REVERSED AND REMANDED.
SHIVERS and WENTWORTH, JJ., concur.
NOTES
[1] §§ 941.45 et seq., F.S.
[2] § 941.45(4), F.S.
[3] § 941.45(4)(e):

"If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to paragraph (e) of subsection (5), such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."
[4] Unless, pending the appeal and completion of the subsequent trial, the prisoner was not returned to the sending state.